UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LESLIE GAMBRELL,

        Plaintiff,                               Hon. Janet T. Neff

v.                                                            Case No. 1:08-CV-557

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

                                          /

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 47 years of age when her insured status expired. (Tr. 25). She possesses a General Equivalency Diploma (GED) and has no past relevant work experience. (Tr. 25, 429-34).

Plaintiff applied for benefits on September 16, 2004, alleging that she had been disabled since August 1, 1994, due to bipolar disorder, depression, and panic disorder. (Tr. 79-83, 94). Plaintiff later amended her disability onset date to March 2, 2003. (Tr. 17, 64, 149). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 27-78). On October 24, 2007, Plaintiff appeared before ALJ Patrick Toal, with testimony being offered by Plaintiff and vocational expert, Heather Benton. (Tr. 423-92). In a written decision dated December 7, 2007, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 17-26). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 4-8). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2003. (Tr. 19). To be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that

she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **RELEVANT MEDICAL HISTORY**

On December 1, 1996, Plaintiff was admitted to a hospital after "taking an overdose of" alcohol and medication. (Tr. 167). Plaintiff denied feeling depressed, but acknowledged binge drinking and experiencing "alcoholic blackouts." (Tr. 167). Plaintiff's husband indicated that he was worried about Plaintiff's alcohol consumption. (Tr. 167). The doctor concluded that Plaintiff's "primary need is for some alcohol treatment." (Tr. 167).

On August 23, 1997, Plaintiff was examined by Dr. Robert Fawcett. (Tr. 168-70). Plaintiff reported that she was experiencing "mood fluctuations." (Tr. 168). Plaintiff reported that she stopped drinking alcohol nine months ago. (Tr. 169). The results of a mental status examination were unremarkable and Plaintiff appeared "neutral to very mildly depressed." (Tr. 170). Plaintiff was diagnosed with Bipolar II Mood Disorder and her GAF score was rated as 55.[1] (Tr. 170).

On April 30, 1999, Plaintiff was examined by Susan Jones, R.N. (Tr. 190-91). Plaintiff reported that she was experiencing difficulty sleeping since her husband unexpectedly passed away five days ago. (Tr. 190). Plaintiff reported that she was "exhausted," but was "having no suicidal thoughts or ideations." (Tr. 190). Plaintiff's medication regimen was modified and she was encouraged to consider counseling. (Tr. 191). On May 28, 1999, Plaintiff reported that she was "going through a severe depression," but that counseling "has been helping." (Tr. 188). On June

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

25, 1999, Plaintiff reported that she was "feeling fairly well overall." (Tr. 187). Dr. Scott Kotchkiss reported that Plaintiff's "bipolar depression appears to be in good control." (Tr. 187).

Plaintiff treated with Dr. Fawcett from August 1999 through August 2001, during which time her medications were regularly adjusted. (Tr. 310-23). Dr. Fawcett's treatment notes indicate that Plaintiff responded favorably to treatment. (Tr. 310-23).

On March 9, 2002, Plaintiff voluntarily admitted herself to the hospital for treatment of depression. (Tr. 228-34). Plaintiff appeared depressed, but she made "good eye contact," was "alert and responsive," and "d[id] not appear to be psychotic." (Tr. 233-34). Plaintiff reported that she "uses marijuana daily. . .and has done so for the past three years." (Tr. 229). Plaintiff reported that her psychiatrist was Dr. Fawcett, but that she had not treated with him "in a couple of months." (Tr. 233). Plaintiff exhibited "a high degree of anxiety with panic," but the results of a mental status examination were otherwise unremarkable. (Tr. 231). Plaintiff was diagnosed with bipolar disorder and her GAF score was rated as 25.[2] (Tr. 231). Plaintiff was admitted to the hospital "to ensure her safety." (Tr. 231). The record does not indicate when Plaintiff was discharged from the hospital.

Following her discharge from the hospital, Plaintiff resumed treating with Dr. Fawcett. Treatment notes dated March 19, 2002 indicate that Plaintiff was "doing well." (Tr. 309). On April 18, 2002, Dr. Fawcett reported that Plaintiff's mood was "good." (Tr. 308). On August 19, 2002, Dr. Fawcett reported that Plaintiff was "happy" and "staying sober." (Tr. 306). Plaintiff reported that she was experiencing "no panic attacks." (Tr. 306). Treatment notes dated September

---

[2] A GAF score of 25 indicates "behavior is considerably influenced by delusions or halucinations or serious impairment in communication or judgment or inability to function in almost all areas." DSM-IV at 34.

15, 2003, reveal that Plaintiff was "doing well." (Tr. 301). On April 21, 2004, Plaintiff reported that she was "enjoying life." (Tr. 299).

On October 18, 2004, Plaintiff's boyfriend, Burt Cameron, completed a report concerning Plaintiff's activities. (Tr. 116-24). Cameron reported that Plaintiff performs "light cleaning," washes laundry, mows the lawn with a riding mower, washes windows, gardens, shops, cares for her horses and other pets, watches television, and visits with her daughter. (Tr. 116-21).

On December 3, 2004, Dr. Arthur Dundon completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 266-79). Determining that Plaintiff suffered from bipolar disorder and panic attacks, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) and Section 12.06 (Anxiety-Related Disorders) of the Listing of Impairments. (Tr. 267-75). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for these particular Listings. (Tr. 276). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. (Tr. 276).

Dr. Dundon also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 281-83). Plaintiff's abilities were characterized as "moderately limited" in three categories. (Tr. 281-82). With respect to the remaining 17 categories, however, the doctor reported that Plaintiff was "not significantly limited." (Tr. 282-82).

Treatment notes dated December 17, 2004, indicate that Plaintiff was "doing pretty well." (Tr. 296). On March 18, 2005, Dr. Fawcett reported that Plaintiff's mood was "good." (Tr. 295). On December 16, 2005, Dr. Fawcett reported that Plaintiff's mood was "pretty stable." (Tr. 293). Treatment notes dated June 17, 2006, indicate that Plaintiff's mood was "pretty good." (Tr. 291). On October 25, 2006, Dr. Fawcett reported that Plaintiff's mood was "pretty good despite major stressors." (Tr. 290).

At the administrative hearing, Plaintiff testified that she had never worked a full-time job because her "husband had a very good job and was able to support [her]." (Tr. 432). Plaintiff reported that her condition is well controlled when she takes her medication as prescribed and that she has been "relatively stable" since 2003. (Tr. 436-41). Plaintiff reported that she does not participate in counseling because, "I don't want to." (Tr. 439-42). Plaintiff reported that she enjoys being a homemaker and spends a lot of time raising/canning vegetables and caring for her chickens and other farm animals. (Tr. 443-46). Plaintiff reported that she also helps with other farm chores, so long as they do not require "heavy lifting." (Tr. 444-45). Plaintiff also reported that she enjoys gardening, baking, and making jewelry. (Tr. 447-48).

## **ANALYSIS OF THE ALJ'S DECISION**

The ALJ determined that during the time period at issue in this matter, Plaintiff suffered from bipolar disorder, depression, panic disorder, migraine headaches, and drug and alcohol abuse, severe impairments that whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 19-22). The ALJ concluded that while Plaintiff had no previous

7

work experience, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 22-26). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

---

[3]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

While the burden of proof shifts to the Commissioner at step five of the disability determination procedure, Plaintiff bears the burden of proof through step four, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that through the date her insured status expired, Plaintiff retained the capacity to perform work at all exertional levels, subject to the following limitations: (1) Plaintiff is unable to maintain the attention and concentration necessary to perform detailed or complex tasks, and (2) she is unable to have more than minimal interaction with coworkers, supervisors, and the general public. (Tr. 22-23). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff had not performed any past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a

significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Heather Benton.

The vocational expert testified that there existed approximately 8,700 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 480-84). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006) (870 jobs in region constitutes a significant number).

a. The ALJ Properly Assessed the Medical Evidence

Plaintiff asserts that the ALJ failed to accord sufficient weight to certain opinions expressed by Dr. Fawcett. Plaintiff asserts that because Dr. Fawcett was her treating physician, the ALJ was obligated to accord controlling weight to his opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. § 404.1527(d)(2); *see also*, *Wilson*, 378 F.3d at 544.

Plaintiff relies on opinions expressed by Dr. Fawcett several years after her insured status expired. Plaintiff first points to a form Dr. Fawcett completed on or about April 5, 2006, concerning her non-exertional limitations. (Tr. 285-89). This form required the doctor to rate Plaintiff's "mental abilities and aptitudes" in 25 categories. (Tr. 287-88). The doctor characterized

Plaintiff's abilities as "good" in 18 of these categories, but rated Plaintiff's abilities as "fair"[4] in the following categories: (1) maintain regular attendance and punctuality, (2) sustain an ordinary routine without special supervision, (3) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, (4) deal with normal work stress, (5) set realistic goals or make plans independently of others, and (6) deal with stress of semiskilled and skilled work. (Tr. 287-88). Dr. Fawcett also characterized as "poor or none," Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. (Tr. 287). The doctor reported that these limitations "have been in effect since 1997." (Tr. 289).

Plaintiff also relies on an identical report Dr. Fawcett completed on or about August 21, 2007. (Tr. 411-14). In this report, the doctor characterized Plaintiff's abilities as "good" in 14 categories and rated Plaintiff's abilities as "fair" in the following categories: (1) remember work-like procedures, (2) maintain attention for two hour segment, (3) sustain an ordinary routine without special supervision, (4) perform at a consistent pace without an unreasonable number and length of rest periods, (5) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, (6) deal with normal work stress, (7) understand and remember detailed instructions, (8) carry out detailed instructions, and (9) deal with stress of semiskilled and skilled work. (Tr. 412-13). Dr. Fawcett also characterized as "poor or none," Plaintiff's ability to (1) maintain regular attendance and punctuality and (2) complete a normal workday and workweek without interruptions from psychologically based symptoms. (Tr. 412).

---

[4] The form Dr. Fawcett utilized defines "fair" as "ability to function in this area is seriously limited, but not precluded." (Tr. 286).

It must be noted, however, that in this latter report Dr. Fawcett stated that the limitations in question "have been in effect since May 2006," a date more than two years after Plaintiff's insured status expired. (Tr. 414). Whether the ALJ accorded controlling weight to the opinions in this latter report is irrelevant, because even had he done so it would not advance Plaintiff's cause. To be entitled to benefits, Plaintiff must establish that she was disabled prior to December 31, 2003, the date her insured status expired. This report offers no support for this proposition. As for the other report in question, the ALJ's decision to accord it less than controlling weight is supported by substantial evidence.

With respect to Dr. Fawcett's opinions and observations, the ALJ concluded as follows:

> The claimant's activities are in relative accord with the reported symptoms outlined by Dr. Fawcett prior to her date last insured of December of 2003. Specifically, in early 2003, the claimant reported having mild mood swings and about four days of depression. . .On the next visit, she said that her mood had been more neutral since her last visit. She was feeling happy in her relationship and enjoying the animals on her farm. Dr. Fawcett noted that she was calm and relaxed.
>
> In mid-2003, she reported having more anxiety. She reported being stressed by her children because of her relationship with her paramour. Thereafter, most of her conversations with Dr. Fawcett revolved around relationship problems. In September 2003, she was noted as "doing well" and "better" since her medication was increased. Furthermore, Dr. Fawcett said that she had experienced very few panic attacks.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

13

> The Administrative Law Judge has assigned controlling weight to Dr. Fawcett's narrative office impressions prepared contemporaneously with appointments in 2003. Quite obviously, these are of more probative value than questionnaires completed in 2006 and 2007. As previously discussed, his narrative office records do not establish the presence of limitations that would preclude all work activity on a competitive basis.

(Tr. 24).

As the ALJ correctly concluded, the opinions articulated in Dr. Fawcett's April 2006 report are inconsistent with the medical evidence from the time period in question, including Dr. Fawcett's own treatment notes. Moreover, many of the conclusions articulated in Dr. Fawcett's April 2006 report are incorporated into the ALJ's RFC determination. In sum, substantial evidence supports the ALJ's decision to afford less than controlling weight to the opinions expressed in Dr. Fawcett's April 2006 and August 2007 reports.

Plaintiff also argues that the ALJ's opinion must be reversed because he, in discussing the weight to accord Dr. Fawcett's April 2006 and August 2007 reports, failed to discuss the relevant factors. As noted above, when as ALJ accords less than controlling weight to a treating source's opinion, he must "give good reasons" for doing so. In articulating such reasons, the ALJ must consider the following factors, articulated in 20 C.F.R. § 404.1527: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. Plaintiff asserts that the ALJ failed to comply with this requirement. The Court disagrees.

In his opinion, the ALJ stated that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Tr. 23). An

examination of the ALJ's opinion reveals that in discussing Dr. Fawcett's opinions, the ALJ considered the six factors above. While the ALJ may not have addressed each factor individually,[5] such are incorporated in his discussion. The Court, therefore, discerns no error in the ALJ's analysis.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: February 3, 2010  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge

---

[5] The Court notes that Plaintiff has identified no authority that requires the ALJ to individually discuss each factor. Rather, as the authority on which Plaintiff relies indicates, the primary concern is that the ALJ articulate "good reasons" for failing to accord less than controlling weight to a treating source's opinion. Consideration of the factors in question are not an end to themselves, but instead simply the means by which the ALJ articulates the reasons for the weight he assigned the treating source's opinion.